IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| GREGORY MCKEITHEN, | : | Civil No. 3:25-cv-157 |
| Plaintiff | : | (Judge Mariani) |
| v. | : | |
| C.O. COOPER, *et al.*, | : | |
| Defendants | : | |

## MEMORANDUM

Plaintiff Gregory McKeithen ("McKeithen") filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. (Doc. 1). In his complaint, McKeithen names as Defendants: (1) McCool, a Correctional Officer at the State Correctional Institution Rockview ("SCI-Rockview"); (2) Rains, a Correctional Officer at SCI-Rockview; (3) Boone, a Correctional Officer at SCI-Rockview; (4) Peterson, a Lieutenant at SCI-Rockview;[1] and (5) Cooper, a Correctional Officer at the State Correctional Institution Benner Township ("SCI-Benner Township"). (*Id.* at 2-3).

Presently before the Court is Defendants' motion to dismiss the complaint in part pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] (Doc. 17). The motion for partial

---

[1] Hereinafter, the Court will refer to the Defendants alleged to work at SCI-Rockview as the "SCI-Rockview Defendants," where appropriate.

[2] Defendants assert that if their instant motion is granted, this action will proceed on the Eighth Amendment excessive force claim, and state tort claims of assault, battery, false imprisonment, and intentional infliction of emotional distress asserted against Defendants Rains, Boone, McCool, and Peterson. (*See* Doc. 20, at 1).

dismissal is ripe for disposition.[3] For the reasons set forth below, the Court will grant Defendants' motion.

I.  **Legal Standard**

A complaint must be dismissed under Federal Rule of Civil Procedure 12(b)(6), if it does not allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). The plaintiff must aver "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009).

"Though a complaint 'does not need detailed factual allegations, . . . a formulaic recitation of the elements of a cause of action will not do.'" *DelRio-Mocci v. Connolly Prop. Inc.*, 672 F.3d 241, 245 (3d Cir. 2012) (citing *Twombly*, 550 U.S. at 555). In other words, "factual allegations must be enough to raise a right to relief above the speculative level." *Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) (internal citations and quotation marks omitted). A court "take[s] as true all the factual allegations in the Complaint and the reasonable inferences that can be drawn from those facts, but . . . disregard[s] legal conclusions and threadbare recitals of the elements of a

---

[3] McKeithen's briefs in opposition to Defendants' motion for partial dismissal contains facts that are not expressly set forth in the complaint. (*See* Docs. 22, 24; *see also* Doc. 35). The Court may not consider such allegations because a complaint cannot be amended by way of an opposition brief. *See Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.").

cause of action, supported by mere conclusory statements." *Ethypharm S.A. France v. Abbott Laboratories*, 707 F.3d 223, 231, n.14 (3d Cir. 2013) (internal citations and quotation marks omitted).

*Twombly* and *Iqbal* require [a district court] to take the following three steps to determine the sufficiency of a complaint: First, the court must take note of the elements a plaintiff must plead to state a claim. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief. *Connelly v. Steel Valley Sch. Dist.*, 706 F.3d 209, 212 (3d Cir. 2013).

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not show[n] - that the pleader is entitled to relief." *Iqbal*, 556 U.S. at 679 (internal citations and quotation marks omitted). This "plausibility" determination will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

However, even "if a complaint is subject to Rule 12(b)(6) dismissal, a district court must permit a curative amendment unless such an amendment would be inequitable or futile." *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 245 (3d Cir. 2008).

> [E]ven when plaintiff does not seek leave to amend his complaint after a defendant moves to dismiss it, unless the district court finds that amendment would be inequitable or futile, the court must inform the plaintiff that he or she has leave to amend the complaint within a set period of time.

3

*Id.*

## II.    Allegations of the Complaint

### A.    Facts Related to SCI-Rockview

McKeithen alleges that on March 6, 2023, he engaged in a "physical altercation" with McDermott, a non-party Correctional Officer, on A Pod at SCI-Rockview. (Doc. 1, at 7). "Once the altercation as over, [McKeithen] realized that [he] was in serious trouble." (*Id.*). McKeithen alleges that he walked towards Defendant McCool because he knew "that [he] was about to go [to] the Hole." (*Id.*). He alleges that Defendant McCool ordered him to "lay on the floor" and McCool handcuffed him. (*Id.*). Once handcuffed, Defendant Peterson allegedly ordered Defendants Rains and Boone to pick McKeithen up from the floor. (*Id.* at 7-8). Once he was stood up, McKeithen alleges that Defendant Rains tripped him and tried to make him lose his balance. (*Id.* at 8). He alleges that Defendant Boone then pushed him down a set of stairs and purportedly stated "you just assaulted a C.O., what the fuck do you think is going to happen." (*Id.*). McKeithen alleges that Defendants Boone, McCool, Rains, and other unidentified non-party correctional officers then "punched, kicked, kneed and stomped [him] in the face, head, ribs, legs and the buttocks area, until [he] lost consciousness." (*Id.*). During this incident, McKeithen claims that he was not resisting. (*Id.*). He also alleges that an unidentified person put a spit hood mask on him backwards so he could not see and had difficulty breathing. (*Id.*).

Defendant Peterson then allegedly ordered the officers to pick up McKeithen. (*Id.* at 8, 10). McKeithen claims that he was picked up and walked about three paces when Defendant Peterson allegedly ordered the officers to "take him back down." (*Id.* at 10). McKeithen alleges that he was taken to the ground again and Defendants Boone, McCool, Rains, and other unidentified non-party correctional officers "punched, kicked, kneed and stomped" him. (*Id.*). McKeithen alleges that he could not breathe and was choking on his own blood. (*Id.*). He alleges that he was picked up again and walked three to four paces before he was thrown back on the ground. (*Id.*). McKeithen claims that an unidentified person untied his boot and twisted his ankle so far that he felt his ankle pop three times. (*Id.*). He alleges that he was punched and kicked again and was dragged down more steps and punched two more times by an unidentified individual. (*Id.*). McKeithen asserts that he was then placed in a chair and escorted to medical. (*Id.* at 9-10). A nurse examined McKeithen, and he was immediately transported to an outside hospital via ambulance. (*Id.* at 9-10). At the hospital, McKeithen underwent MRIs and x-rays and "found out that [he] had serious injuries." (*Id.* at 9).

B. <u>Facts Related to SCI-Benner Township</u>

McKeithen remained in the hospital for about five hours and was then transferred from the outside hospital to SCI-Benner Township. (*Id.*). McKeithen was in a wheelchair and had a boot on his ankle. (*Id.*). Upon arrival at SCI-Benner Township, McKeithen was sent to the Psychiatric Observation Cell ("POC"), and photographs were taken of his

5

injuries. (*Id.*). On March 7, 2023, McKeithen was escorted to the Restricted Housing Unit ("RHU") at SCI-Benner Township and was allegedly forced out of his wheelchair and had to ambulate on one leg. (*Id.*). He claims an unidentified non-party individual denied his request for a mattress, sheets, blanket, grievances, hygiene materials, envelopes, and a pen. (*Id.*).

On March 8, 2023, McKeithen claims that Defendant Cooper approached his cell door and said that he was "burnt for a tray dumb ass" and did not give him meals. (*Id.* at 9, 11). He also alleges that Defendant Cooper denied him a mattress, sheets, blanket, grievances, hygiene materials, envelops, and a pen for the next three days. (*Id.* at 11). McKeithen alleges that Defendant Cooper made him sign a refusal form for the hospital by allegedly threatening to "kick [his] teeth in." (*Id.*).

McKeithen sets forth the following claims for relief: (1) assault and battery; (2) false imprisonment; (3) malicious prosecution and fraudulent representation; (4) intentional infliction of emotional distress; (5) harassment; (6) Eighth Amendment excessive use of force; and (7) First Amendment retaliation. (*Id.* at 5).

Defendants now move to dismiss all claims against Defendant Cooper, the malicious prosecution and fraudulent representation claims, and the First Amendment retaliation claim. (Docs. 20, 21).

## III. Discussion

### A. Malicious Prosecution and Fraudulent Representation Claims

Defendants move to dismiss the malicious prosecution and fraudulent representation claims based on McKeithen's failure to plead the requisite elements of the claims. (Doc. 21, at 7-8). McKeithen "has no objection to dismissing the fraudulent representation claim, and the malicious prosecution claim." (Doc. 22, at 3 n.2). He concedes that "[t]hese claims can be dismissed in agreement with Defendants['] request." (*Id.*). Because McKeithen agrees to the dismissal of these claims, the Court will dismiss the malicious prosecution and fraudulent representation claims without a merits analysis.

### B. Claims Against Defendant Cooper

In their motion to dismiss, Defendants argue that McKeithen's complaint fails to comply with Rule 20 of the Federal Rules of Civil Procedure. (Doc. 21, at 5-7). More specifically, Defendants argue that the claims asserted against Defendant Cooper are misjoined because they do not arise out of the same transaction or occurrence of the events and claims alleged against the SCI-Rockview Defendants. (*Id.*).

Rules 18 and 20 of the Federal Rules of Civil Procedure explain the circumstances in which multiple claims and multiple defendants may be joined. Rule 18 states that a party "may join...as many claims as it has against an opposing party." FED. R. CIV. P. 18(a). Thus, when an action involves only one defendant, a plaintiff may assert every claim he has against that defendant, regardless of whether the claims are factually or legally related to

7

one another, subject only to the limits of federal subject-matter jurisdiction. *See* 7 CHARLES ALAN WRIGHT & ARTHUR MILLER, ET AL., FEDERAL PRACTICE & PROCEDURE § 1655 (3d ed. 2019); *see also* FED. R. CIV. P. 18(a).

When a plaintiff seeks to assert claims against multiple defendants, however, Rule 20 also comes into play. *See* WRIGHT & MILLER, *supra*, § 1655. Rule 20 governs permissive joinder of parties and explains that a plaintiff may only join multiple defendants in a single case if (1) "any right to relief is asserted against them jointly, severally, or in the alternative with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences," and (2) "any question of law or fact common to all defendants will arise in the action." FED. R. CIV. P. 20(a)(2). In other words, a plaintiff may join multiple defendants in a single complaint only if he asserts at least one claim linking all defendants that (1) arises out of the same transaction or occurrence and (2) involves a common question of law or fact. *Id.*; WRIGHT & MILLER, *supra*, § 1655. That is, there must be at least one common claim against all named defendants. Once a plaintiff satisfies this requirement, he may invoke Rule 18 to assert "as many claims as [he] has" against one or more defendants, even if those additional claims are unrelated to the common claim linking all defendants. *See* FED. R. CIV. P. 18(a); WRIGHT & MILLER, *supra*, § 1655.

Even when questions of law are common to all defendants, but each defendant is not part of the same occurrence, such that there are different questions of fact, claims may be deemed improperly joined. *Kokinda v. Pennsylvania Dep't of Corr.*, 663 F. App'x 156,

8

158 (3d Cir. 2016). In *Kokinda*, the Third Circuit found that it was not an abuse of discretion to dismiss as improperly joined claims that prison medical service providers and Department of Corrections' employees at three different facilities fed the plaintiff a diet that contained soy despite knowing that he was allergic to it. *Kokinda*, 663 F. App'x 156. While the plaintiff alleged that each defendant violated his constitutional rights in an identical way, the fact that the alleged misconduct occurred at three institutions at separate times, and that different defendants independently violated his rights in the same manner was not sufficient to link the defendants together for joinder purposes. *Id*. (citation omitted).

To remedy a misjoinder, a court may add or drop a party or sever any claims. FED. R. CIV. P. 21 ("On motion or on its own, the court may at any time, on just terms, add or drop a party. The court may also sever any claim against a party").

The Court finds that McKeithen's complaint violates Rule 20. Upon review of the complaint, McKeithen's claims against the SCI-Rockview Defendants arise out of alleged excessive use of force and state tort claims of assault, battery, false imprisonment, and intentional infliction of emotional distress at SCI-Rockview, and the claims against Defendant Cooper arise out of alleged retaliation and inadequate conditions of confinement at SCI-Benner Township. (Doc. 1, at 7-11). The separate and distinct events and claims in McKeithen's complaint do not "aris[e] out of the same transaction, occurrence or series of transactions or occurrences" and do not raise a "question of law or fact common to all defendants," as is required by Rule 20. FED. R. CIV. P. 20(a)(2). His claims stem from

9

separate and distinct events that occurred at two state prisons at different times, involving different correctional staff. Moreover, McKeithen's claims are not based on similar theories of liability—the elements of the claims against the SCI-Rockview Defendants are legally and factually different from the elements of the claims asserted against Defendant Cooper. It is apparent from the complaint that there are significant factual differences in the claims and potential defenses to the claims. Under Rule 20, these disconnected and unrelated claims against multiple Defendants cannot stand. Thus, the Court finds that the improperly joined claims against Defendant Cooper must be dismissed. *See Kokinda*, 663 F. App'x at 159 (concluding that plaintiff improperly joined claims where he was held at three separate prison institutions and different officials at each prison were alleged to have "independently violated his civil rights"). If McKeithen wishes to pursue his unrelated claims against Defendant Cooper in federal court, he must file a separate Section 1983 action naming Cooper as a defendant.

C.     First Amendment Retaliation Claim

To plead a prima facie First Amendment retaliation claim, a plaintiff must allege that: "(1) [their] conduct was constitutionally protected; (2) [they] suffered an adverse action at the hands of prison officials; and (3) [their] constitutionally protected conduct was a substantial or motivating factor in the decision to [retaliate against them]." *Watson v. Rozum*, 834 F.3d 417, 422 (3d Cir. 2016) (citations omitted). As for the first element of a plaintiff's prima facie retaliation claim, examples of constitutionally protected activities are

the filing of lawsuits and prison grievances. *Id.* (reiterating prior holding that a prisoner-plaintiff engages in constitutionally protected activity when they file a grievance against a prison official); *Allah v. Seiverling*, 229 F.3d 220, 223-25 (3d Cir. 2000) (concluding that the prisoner-plaintiff stated a First Amendment retaliation claim where he alleged that he had been kept in administrative segregation in retaliation for filing civil rights claims against prison officials).

Regarding the second element of a plaintiff's prima facie case, an adverse action is one that is "sufficient to deter a person of ordinary firmness from exercising [their] [constitutional] rights[.]" *Mitchell v. Horn*, 318 F.3d 523, 530 (3d Cir. 2003) (second alteration in original) (citations and internal quotation marks omitted); *Fantone v. Latini*, 780 F.3d 184, 191 (3d Cir. 2015), *as amended* (Mar. 24, 2015) (explaining that an adverse action must be "sufficient to deter a person of ordinary firmness from exercising [their] constitutional rights..." (citation omitted)). However, to be actionable under Section 1983, the alleged adverse action must be more than *de minimis*. *See McKee v. Hart*, 436 F.3d 165, 170 (3d Cir. 2006) (explaining that the alleged retaliatory conduct "need not be great in order to be actionable, but it must be more than *de minimis*" (citations and internal quotation marks omitted)).

Finally, with respect to the third element of a plaintiff's prima facie case, i.e., the causation element, the Court observes that, "[b]ecause motivation is almost never subject to proof by direct evidence," a plaintiff must typically "rely on circumstantial evidence to prove

11

a retaliatory motive." *Watson*, 834 F.3d at 422. The plaintiff "can satisfy [their] burden with evidence of either (1) an unusually suggestive temporal proximity between the protected activity and the allegedly retaliatory action, or (2) a pattern of antagonism coupled with timing that suggests a causal link." *Id.* (footnote omitted). "In the absence of that proof the plaintiff must show that from the 'evidence gleaned from the record as a whole' the trier of the fact should infer causation." *Lauren W. ex rel. Jean W. v. DeFlaminis*, 480 F.3d 259, 267 (3d Cir. 2007) (quoting *Farrell v. Planters Lifesavers Co.*, 206 F.3d 271, 281 (3d Cir. 2000)); *see also Marra v. Phila. Hous. Auth.*, 497 F.3d 286, 302 (3d Cir. 2007) (pointing out that circumstantial evidence may include "inconsistent reasons given by the employer for terminating the employee or the employer's treatment of other employees, that give rise to an inference of causation when considered as a whole"), *as amended* (Aug. 28, 2007).

McKeithen asserts that Defendants retaliated against him for engaging in a physical altercation with a non-party correctional officer on March 6, 2023. (Doc. 1, at 5, 7). He asserts that Defendants retaliated by assaulting and harassing him. (*Id.*). Defendants argue that McKeithen failed to allege a plausible First Amendment retaliation claim because fighting with a correctional officer did not constitute constitutionally protected conduct. (Doc. 21, at 8-9).

While McKeithen believes that Defendants' actions were retaliatory in the definitional sense of the word, he does not set forth a legal claim of retaliation. It is implausible that McKeithen's physical altercation with a correctional officer, which he asserts triggered the

retaliation, was a constitutionally protected activity. Moreover, "[a]fter additional research," McKeithen "understands that he cannot base a claim of retaliation on mistreatment subsequent to an altercation with correctional personnel." (Doc. 35, at 3). McKeithen fails to allege that Defendants' actions were taken due to his participation in a constitutionally protected activity. McKeithen thus fails to clear the first hurdle of a retaliation claim and this claim must be dismissed.

## IV.    Leave to Amend

Before dismissing a complaint for failure to state a claim upon which relief may be granted, the Court must grant the plaintiff leave to amend the complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hospital*, 293 F.3d 103, 114 (3d Cir. 2002). "In assessing 'futility,' the district court applies the same standard of legal sufficiency as applies under Rule 12(b)(6)." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997) (citation omitted).

McKeithen's retaliation claim is legally flawed and thus incurable. Therefore, the Court concludes that curative amendment would be futile.

## V.   Conclusion

For the reasons stated above, Defendants' motion for partial dismissal will be granted. (Doc. 20). The motion to dismiss the malicious prosecution and fraudulent representation claims, the First Amendment retaliation claim, and the claims against Defendant Cooper will be granted.

A separate Order shall issue.

      Robert D. Mariani
      United States District Judge

Dated: February 3, 2026